PARRO, J.
 

 |?Defendant, American Family Life Assurance Company of Columbus (Aflac), appeals a summary judgment in favor of the plaintiff, Benny A. McDonald, decreeing that Mr. McDonald was entitled to coverage for successive twelve-month periods of short-term disability benefits for the same continuing disability, after waiting a period of 180 days between claims. The judgment further denied Aflac’s cross-motion for summary judgment, to which Aflac has filed an application for a writ of supervisory review. For the following reasons, we reverse the judgment on appeal and grant the writ filed by Aflac.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Mr. McDonald was involved in an automobile accident on April 22, 2008. As a
 
 *1088
 
 result of this accident, Mr. McDonald suffered injuries, which he alleges rendered him permanently disabled and unable to return to work. At the time of the accident, Mr. McDonald was insured under a short-term disability insurance policy provided by Aflac, with a maximum benefit period of twelve months. Mr. McDonald subsequently submitted a claim under this policy, alleging that he had been totally and permanently disabled and unable to work since the accident. In response to this claim, Aflac paid Mr. McDonald for 63 days of short-term disability.
 
 [1]
 
 However, Aflac refused to pay additional benefits after learning of the possibility that Mr. McDonald’s accident had occurred while he was on the job.
 
 [2]
 

 On November 11, 2008, Mr. McDonald filed a petition in the trial court, contending that he was entitled to disability payments of $2200 per month, for a benefit period of twelve months, retroactive to the date of the accident, April 22, 2008. Mr. McDonald further claimed that Aflac had arbitrarily and capriciously failed to pay him the benefits due under the policy and that Aflac was, therefore, responsible for penalties and attorney fees.
 

 |sThe issue of whether Mr. McDonald was on the job at the time of the accident was resolved by the trial court, when it granted a partial summary judgment in Mr. McDonald’s favor, concluding that Mr. McDonald had been off the job at the time of the accident. In response to that ruling, Aflac paid Mr. McDonald short-term disability benefits for the maximum twelve-month benefit period provided under the policy, less the value of the benefits paid for the 63 days he had already received.
 

 Thereafter, Mr. McDonald filed a motion for leave to file an amended and supplemental petition asserting a claim for “successive periods of disability” under the Aflac policy, as well as for statutory penalties and attorney fees. Mr. McDonald then moved for a summary judgment on the issue of his entitlement to payment for successive periods of disability. Aflac opposed the motion and filed its own cross-motion for summary judgment, seeking a dismissal of Mr. McDonald’s petition, including both the claim for successive periods of disability and the claims for statutory penalties and attorney fees. After a hearing, the trial court took the matter under advisement and subsequently issued written reasons for judgment in which it determined that Mr. McDonald was entitled to successive twelve-month periods of short-term disability benefits, after waiting a period of 180 days from the termination of each benefit period before making a new claim. The trial court cited no authority for this ruling and gave no specific basis in support of this finding. However, in light of its written reasons, the trial court granted Mr. McDonald’s motion for summary judgment and denied Aflac’s cross-motion for summary judgment. A partial final judgment in accordance with these reasons was signed on June 2, 2010. The trial court designated this judgment as final
 
 *1089
 
 and appealable in accordance with LSA-C.C.P. art. 1915(B).
 

 Aflac has appealed that portion of the judgment granting Mr. McDonald’s motion for summary judgment. In addition, Aflac filed an application for a writ of supervisory review regarding that portion of the judgment that denied its motion for summary judgment.
 
 [3]
 
 By order of a different panel of this court, Aflac’s writ application was preferred to this panel for consideration, along with the appeal.
 
 [4]
 

 APPLICABLE LAW
 

 An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
 
 Smith v. Out Lady of the Lake Hosp., Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact.
 
 West v. Clarendon Nat’l Ins. Co.,
 
 99-1687 (La.App. 1st Cir.7/31/00), 767 So.2d 877, 879. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2);
 
 Lee v. Grimmer,
 
 99-2196 (La.App. 1st Cir.12/22/00), 775 So.2d 1223, 1225. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B);
 
 Perry v. City of Bogalusa,
 
 00-2281 (La.App. 1st Cir.12/28/01), 804 So.2d 895, 899.
 

 Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment.
 
 Doiron v. Louisiana Farm Bureau Mut. Ins. Co.,
 
 98-2818 (La.App. 1st Cir.2/18/00), 753 So.2d 357, 362 n. 2. In seeking a declaration of coverage under an insurance policy, Louisiana law places the burden on the plaintiff to establish every fact essential to recovery and to establish that the claim falls within the policy coverage.
 
 Ho v. State Farm Mut. Auto Ins. Co.,
 
 03-0480 (La.App. 3rd Cir.12/31/03), 862 So.2d 1278, 1281, citing
 
 Pierce v. Aetna Life and Cas. Ins. Co.,
 
 572 So.2d 221, 222 (La.App. 1st Cir.1990). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.
 
 Jones v. Estate of Santiago,
 
 03-1424 |5La.4/14/04), 870 So.2d 1002, 1010.
 

 DISCUSSION
 

 Essentially, the issue before this court is whether Mr. McDonald’s total disability, which has continued unabated since his April 22, 2008 accident, can give rise to “separate periods of disability,” as that phrase is used in the definition of the term “successive periods of disability” provided in the policy.
 
 [5]
 
 If not, Mr. McDonald has
 
 *1090
 
 simply sustained a single, continuous period of disability for which he has already received the maximum payment of benefits allowed pursuant to the short-term disability policy at issue.
 

 An insurance policy is an agreement between the parties and should be construed according to the general rules of interpretation of contracts as set forth in the Louisiana Civil Code.
 
 Cadwallader v. Allstate Ins. Co.,
 
 02-1637 (La.6/27/03), 848 So.2d 577, 580. When interpreting insurance contracts, the court’s responsibility is to determine the parties’ common intent.
 
 Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co.,
 
 93-0911 (La.1/14/94), 630 So.2d 759, 763; LSA-C.C. art. 2045. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage.
 
 Ledbetter v. Concord Gen. Corp.,
 
 95-0809 (La.1/6/96), 665 So.2d 1166, 1169,
 
 decree amended,
 
 95-0809 (La.4/18/96), 671 So.2d 915.
 

 When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. Such intent is to be determined in accordance with the general, ordinary, plain, and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.
 
 Ledbetter.
 
 665 So.2d at 1169; see LSA-C.C. art. 2047. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written.
 
 Ledbetter,
 
 665 So.2d at 1169. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or to achieve an absurd conclusion.
 
 Reynolds v. Select Properties, Ltd.,
 
 93-1480 (La. |4/11/94),6 634 So.2d 1180, 1183. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions on the policy obligations they contractually assume.
 
 Campbell v. Markel American Ins. Co.,
 
 00-1448 (La.App. 1st Cir.9/21/01), 822 So.2d 617, 623,
 
 writ denied,
 
 01-2813 (La.1/4/02), 805 So.2d 204.
 

 By its express terms, the policy at issue paid benefits for short-term disability caused by sickness or off-the-job injury. Where a policy of insurance contains a definition of any word or phrase, that definition is controlling.
 
 Cangelosi v. Allstate Ins. Co.,
 
 96-0159 (La.App. 1st Cir.9/27/96), 680 So.2d 1358, 1362,
 
 writ denied,
 
 96-2586 (La.12/13/96), 692 So.2d 375. In establishing the limits of its liability, the policy provides, in pertinent part, the following definitions:
 

 C. BENEFIT PERIOD: the maximum number of days after the Elimination Period, if any, for which you can be paid benefits for any one or Successive Periods of Disability. Each new Benefit Period is subject to a new Elimination Period. See the Policy Schedule for the Benefit Period you selected. For the purposes of this calculation, a “month” is defined as 30 days for which benefits are paid. See definition of “Successive Periods of Disability.”
 

 * * *
 

 N. SUCCESSIVE PERIODS OF DISABILITY: separate periods of disability, if caused by the same or a related condition and not separated by 180 days or more, are considered a continuation of the prior disability. Separate periods of disability resulting from unrelated causes are considered a continuation of the prior disability unless they are separated by your returning to work at a Full-Time Job for 14 working days, during which you are performing the
 
 *1091
 
 material and substantial duties of this job and are no longer qualified to receive disability benefits.
 

 0. TOTALLY DISABLED: your continuing inability to perform the material and substantial duties of your Full-Time Job. You must also be under the care and attendance of a Physician for your condition. If you are unable to perform the material and substantial duties of your Full-Time Job but are able to work at any job, you will continue to be considered Totally Disabled as long as your earnings are less than 80% of your Base Pay Earnings at the time you became Totally Disabled. If you return to work at any job and are earning 80% or more of your predisability Base Pay Earnings, you will no longer be considered Totally Disabled.
 

 According to the policy schedule, the benefit period selected by Mr. McDonald was twelve months. There is no dispute that Aflac paid Mr. McDonald for twelve months of disability; however, Mr. McDonald contends that he was further entitled to 17successive periods of disability, as defined in the policy, upon waiting 180 days between claims. On the other hand, Aflac asserts that Mr. McDonald has sustained only one, single, continuous period of disability.
 

 The facts of this matter are not in dispute. Mr. McDonald was involved in a single accident, which by his own admission, has caused him to be totally disabled, without interruption, since the date of the accident. There is also no dispute that Mr. McDonald has never ceased being disabled as a result of this accident. He has never returned to work in any capacity, and he claims that he will never be able to work again as a result of the accident. Accordingly, it is clear that there has only been one, single, continuous period of disability that commenced with the accident and has continued to the present.
 

 The policy authorizes payment during the “benefit period” for any “one or Successive Periods of Disability.” The policy defines “successive periods of disability” in terms of “separate periods of disability,” which requires that there be
 
 more than
 
 one period of disability.
 
 [6]
 
 Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050. By interpreting the policy according to the general rules of interpretation of contracts and giving the words their plain and ordinary meanings, it is clear that Mr. McDonald has not sustained any separate periods of disability, as he has, by his own admission, sustained only a single, continuous period of disability that has existed, without interruption, since the date of his accident. Because there has only been one period of disability in this matter, Mr. McDonald is not entitled to payment for successive periods of disability pursuant to the policy.
 

 Nevertheless, Mr. McDonald contends that, in order to properly file a claim for successive periods of disability, the only requirement under the Aflac policy language is that he wait 180 days between claims. In support of this argument, Mr. McDonald relies on
 
 Etter v. Am. Family Life Ins. Co.,
 
 No. E-08-051, 2009 WL 641342 (Ohio App. |86th Dist.3/13/09),
 
 appeal not allowed,
 
 122 Ohio St.3d 1521, 913 N.E.2d 457 (2009),
 
 [7]
 
 in which the court was
 
 *1092
 
 required to apply the following language from an earlier Aflac short-term disability policy:
 

 M. SUCCESSIVE PERIODS OF DISABILITY: separate periods of disability, if due to the same or related condition and not separated by 180 days or more will be considered a continuation of the prior disability. Separate periods of disability due to unrelated [causes] will be considered a continuation of the prior disability unless they are separated by your returning to work at a Full-Time Job for at least l(one) full day, during which you are performing the material and substantial duties of this job and are no longer qualified to receive disability benefits.
 

 Id.
 
 at *2.
 

 Ms. Etter filed suit against Aflac for breach of contract, contending that Aflac had wrongfully denied her claims under a short-term disability insurance policy. Specifically, Ms. Etter initially filed two claims under the policy for disability related to a chronic condition, Crohn’s disease. These claims were for two separate periods between June 3 and September 7, 2003. Aflac apparently considered those two periods to be successive periods of disability and fully paid them according to the policy limits.
 
 Etter
 
 at *3. Thereafter, Ms. Etter returned to work at her full-time job, sometimes using earned sick leave, comp time, and vacation days as part of her work week. With respect to her prior claims, the last day of her second paid claim was September 7, 2003, and Ms. Etter did not file another claim until March 11, 2004, which was 186 days after the end of her last previous claim.
 
 Id.
 

 In discussing the policy language in light of the facts, the
 
 Etter
 
 court stated:
 

 The language for successive periods of disability caused by the same condition, however, requires only that the claimed periods must be separated by 180 days in order for a claim to be filed.... Certainly chronic conditions would fall within the purview of claims caused by the same condition. The policy simply limits the insured’s ability to file a claim for such a condition to every 180 days, assuring that the policy covers only short-term periods for disability.
 

 In addition, the policy language does not include any reference to returning to full-time work, i.e., 30 hours per week, during those 180 days. Clearly, the 180 days would not necessarily all be work days. Therefore, one reasonable interpretation of this part of the policy is that,
 
 as long as the person was still employed in the full-time position,
 
 the policy would cover successive claims for the same condition, limited only by the 180 day separation.
 

 [[Image here]]
 

 |
 
 ySince appellant continued to work at her full-time position
 
 and 180 days separated her claims, a reasonable interpretation of the policy language would be that she was entitled to coverage.
 

 Id.
 
 (Emphasis added.)
 

 Mr. McDonald has, of course, focused on the part of the above language that states that the policy allows successive claims for the same condition, limited only by the 180-day separation. However, his position would necessarily presuppose “separate periods of disability,” separated by 180 days or more, before a successive claim could be made for a new benefit period. Moreover, the facts of the
 
 Etter
 
 case also note that Ms. Etter returned to her full-time job in between her claim that ended September 7, 2003, and the claim that she
 
 *1093
 
 filed 186 days later. Neither of these factual situations exist in our case. Accordingly, nothing in the court’s ruling supports Mr. McDonald’s position that he is entitled to coverage for more than one benefit period due to a single, uninterrupted period of disability for which he has remained totally disabled and unable to return to work since the date of the accident.
 

 We note that such an interpretation would be unreasonable or strained, so as to either enlarge the provisions beyond what was reasonably contemplated by the terms of the policy or to achieve an absurd conclusion.
 
 See Reynolds v. Select Properties, Ltd.,
 
 634 So.2d at 1183. Mr. McDonald purchased a short-term disability insurance policy. By reading the policy as Mr. McDonald would prefer, the policy would be transformed into a long-term disability policy, as it would continue to provide benefits for Mr. McDonald in twelve-month increments with no time limitation, as long as he waited 180 days between filing claims. Clearly, that was not the intention of the parties; therefore, we find that the trial court erred in granting summary judgment in favor of Mr. McDonald.
 

 Furthermore, based on the above analysis, there is no reasonable interpretation under the facts of this matter under which coverage may be afforded to Mr. McDonald for successive periods of disability under the terms of the policy. Therefore, we grant Aflac’s writ to the extent that it seeks to dismiss Mr. McDonald’s claim for successive | inperiods of disability.
 
 [8]
 

 In addition, Mr. McDonald claimed that he was entitled to statutory penalties and attorney fees pursuant to LSA-R.S. 22:1821(A),
 
 [9]
 
 because Aflac had allegedly acted arbitrarily and capriciously in refusing to pay his benefits. An award of penalties and attorney fees is punitive in nature, and the statutory authority for such an award is strictly construed. The burden is on the claimant to prove arbitrariness and capriciousness or lack of probable cause.
 
 See Stewart v. Calcasieu Parish School Bd.,
 
 05-1339 (La.App. 3rd Cir.5/3/06), 933 So.2d 797, 801,
 
 writ denied,
 
 06-1910 (La.11/3/06), 940 So.2d 666. The party claiming entitlement to penalties and attorney fees bears the burden of proving that the insurer had sufficient proof that payment on a claim was due as a basis for establishing that the insurer was arbitrary and capricious in denying the claim.
 
 Id.
 
 The determination of whether the insurer acted arbitrarily or capriciously must be based, at least in part, on the information known to the insurer at the time the claim was made. If the insurer has a good faith, reasonable explanation for its failure to timely pay on a claim, then the penalty provisions should not apply. Also, when a reasonable disagreement exists between an insurer and an insured, the insurer is not arbitrary and capricious or without probable cause to deny payment on the claim that is in dispute.
 
 Id.
 

 In his petitions, Mr. McDonald has not alleged any facts supporting his claim that Aflac was arbitrary or capricious in not immediately paying his claims for disability benefits under the policy. It is undisputed that Aflac paid Mr. McDonald for 63 days of disability when the claim was first filed. It is also undisputed that Aflac failed to pay future benefits after there was a dispute about whether Mr. McDonald had been injured while on the job. This concern by Aflac appears reasonable,
 
 *1094
 
 since Mr. McDonald filed a claim for workers’ compensation benefits with his employer for the same accident that was the subject of his short-term disability claim with Aflac, which only applied to offjthe-jobu injuries. In addition, there is no evidence that, with regard to the claim for successive periods of disability, Mr. McDonald ever filed any claim with Aflac prior to filing his amending and supplemental petition with the court.
 
 [10]
 

 Mr. McDonald does not contest either of these statements. Instead, Mr. McDonald argues in his appellate brief that the issue is not properly before this court, because the trial court has not yet ruled on the issue. However, in his memorandum submitted in opposition to the writ application, which has been referred to this panel for consideration along with the appeal, Mr. McDonald contends that the writ application is not properly before the court because it raises issues that are already before the court on appeal. The trial court has ruled on the issue in denying Aflac’s motion for summary judgment, and the issue is properly before this court, as the writ application was referred to this panel for consideration. As Mr. McDonald has not provided any evidence that Aflac acted arbitrarily or capriciously in its failure to pay short-term disability benefits, and the evidence actually appears to demonstrate just the opposite, we additionally grant Aflac’s writ to the extent that it dismisses Mr. McDonald’s claims for statutory penalties and attorney fees.
 

 CONCLUSION
 

 For the above and foregoing reasons, we reverse the judgment of the trial court, which had granted a summary judgment in favor of Benny A. McDonald. We further grant the writ filed by American Family Life Assurance Company of Columbus and dismiss the claims by Mr. McDonald. All costs of this appeal and the writ application are assessed to Benny A. McDonald.
 

 JUDGMENT REVERSED; WRIT GRANTED.
 

 [1]
 

 . Aflac sent Mr. McDonald a check for $850 for 15 days of short-term disability benefits on July 23, 2008, and another check for $2,270 for 48 more days of short-term disability benefits on September 2, 2008. Mr. McDonald accepted these benefit payments and deposited the checks.
 

 [2]
 

 . Mr. McDonald filed a claim for workers’ compensation benefits for the injuries caused by the accident, and he was paid those benefits. In contrast to workers' compensation benefits, which are paid for injuries occurring while the individual is in the course and scope of his employment, the Aflac policy at issue only pays for short-term disability caused by sickness or off-the-job injury.
 

 [3]
 

 . Aflac also filed a request for a stay order, which was granted by the trial court, thus staying all proceedings in the trial court.
 

 [4]
 

 .
 
 McDonald v. American Family Life Assurance Company of Columbus,
 
 10-1287 (La.App.1st Cir.9/27/10) (unpublished writ action).
 

 [5]
 

 .Mr. McDonald has asserted in his petitions, as well as in his affidavit attached to the motion for summary judgment, that he has been totally disabled, without interruption, since the date of the accident. Aflac does not dispute these assertions for purposes of the motions for summary judgment.
 

 [6]
 

 . The phrase "separate periods of disability” is not defined in the policy herein. However,
 
 The American Heritage Dictionary of the English Language
 
 (4th ed., 2001), defines "separate” as "existing as an independent entity; distinct; not shared; individual.”
 

 [7]
 

 . Both Mr. McDonald and Aflac rely on this case as support for their respective positions
 
 *1092
 
 before this court.
 

 [8]
 

 . Mr. McDonald has already received payment for the twelve-month disability period he sued for in his original petition.
 

 [9]
 

 . Prior to 2008 La. Acts, No. 415, § 1, effective January 1, 2009, this statute was numbered LSA-R.S. 22:657.
 

 [10]
 

 . Moreover, as we have determined that Af-lac is not liable to Mr. McDonald for coverage for successive periods of disability, Aflac could not have been arbitrary or capricious in its denial of coverage.