# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-498 consolidated with 17-64

**SARAH BARBER, ET AL.**

**VERSUS**

**LOUISIANA MUNICIPAL RISK MANAGEMENT**

**AGENCY GROUP SELF-INSURED FUND, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 251,753
HONORABLE GEORGE CLARENCE METOYER JR, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.

**ESTATE OF JEANE MOTION TO SUPPLEMENT THE RECORD DENIED.**
**REPUBLIC MOTION TO DISMISS AND MOTION TO STRIKE JEANE'S ANSWER TO THE APPEAL GRANTED IN PART AND DENIED IN PART.**
**REPUBLIC ALTERNATIVE MOTION TO SUPPLEMENT THE RECORD ON APPEAL DENIED.**
**ESTATE OF JEANE MOTION TO REMAND AND/OR STAY THE APPEAL DENIED.**
**ESTATE OF JEANE EXCEPTIONS OF NO RIGHT OF ACTION AND MOOTNESS OVERRULED.**
**ESTATEOF JEANE MOTION TO DISMISS REPUBLIC'S SUSPENSIVE APPEAL DENIED.**
**REPUBLIC MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF-APPELLEES' "OBJECTIONS TO REPUBLIC SMJ EXHIBITS" CONTAINED WITHIN THE PLAINTIFFS' APPELLEE BRIEF DENIED.**

**REPUBLIC MOTION TO DISMISS PLAINTIFF-APPELLEES' ANSWER TO THE APPEAL DENIED.**
**REPUBLIC MOTION TO STRIKE MISREPRESENTATIONS OF FACT CONTAINED WITHIN THE APPELLEES BRIEFS, AND ALTERNATIVELY, MOTION TO SUPPLEMENT THE RECORD DENIED.**
**REPUBLIC MOTION TO STRIKE EXHIBITS ATTACHED TO THE ESTATE OF LARRY JEANE'S BRIEFS, OPPOSITION MEMORANDA, AND EXCEPTION GRANTED.**
**REPUBLIC ALTERNATIVE MOTION TO SUPPLEMENT THE RECORD WITH COUNTER EVIDENCE DENIED.**
**ESTATE OF JEANE MOTION TO STRIKE ALLEGED MAY 26, 2017 LETTER AND AFFIDAVIT OF ALICIA HAMBY DENIED AS MOOT.**
**WRIT GRANTED AND MADE PEREMPTORY.**
**JUDGMENT REVERSED.**
**REMANDED FOR FURTHER PROCEEDINGS.**

Douglas K. Williams
Christopher A. Mason
Breazeale, Sacshe & Wilson, L.L.P.
P. O. Box 3197
Baton Rouge, LA 70821-3197
(225) 387-4000
COUNSEL FOR DEFENDANT-APPLICANT-APPELLEE:
    Republic Fire & Casualty Ins. Co.

Randall B. Keiser
Jeremy C. Cedars
Keiser Law Firm, P.L.C.
P. O. Box 12358
Alexandria, LA 71315
(318) 443-6168
COUNSEL FOR DEFENDANT-RESPONDENT:
    Estate of Larry Jeane, Sr.

Derrick G. Earles
David C. Laborde
Jeff D. Easley
Laborde Earles Law Firm
P. O. Box 80098
Lafayette, LA 70598
(337) 261-2617
COUNSEL FOR PLAINTIFFS-RESPONDENTS:
    Sarah Barber
    Elizabeth Spivey
    Sarah Barber, o/b/o Abbigail Turner
    Racheal Spivey
    Jamie Turner
    Wallace Spivey
    Jamie Turner, o/b/o Abbigail Turner
    Dana Spivey

**PICKETT, Judge.**

Republic Fire and Casualty Insurance Company (Republic), a defendant in the case before us, appeals a judgment of the court denying, in part, its motion for summary judgment, which found that the umbrella insurance policy issued to Larry and Johanna Jeane provided liability coverage for the damages suffered by the injured plaintiffs. The plaintiffs, Sarah Barber and Jamie Turner (individually and on behalf of their minor daughter Abbigail Turner), Dana Spivey, Elizabeth Spivey, Wallace Spivey, and Racheal Spivey (collectively "the Barber plaintiffs"), have answered the appeal, seeking redaction of language from the judgment requiring "exhaustion of the underlying LMRMA Busines Auto Agreement, …, and any other insurance available to the Estate of Jeane." The Estate of Larry Jeane has filed an answer to the appeal alleging that subsequent to the January 30, 2017 judgment, Republic waived its coverage defense by contesting the liability of Larry Jeane for the damages suffered by the Barber plaintiffs without providing separate counsel to the Estate of Jeane.

The Estate of Jeane has also filed an Exception of No Right of Action and Mootness, and the parties have filed numerous motions in this court.

## FACTS

Larry Jeane, the elected Marshal of Pineville, Louisana, was driving his city marshal vehicle when he crossed the center line and collided with a vehicle in which the Barber plaintiffs were the passengers. Mr. Jeane died two days later from injuries sustained in the collision, and the Barber plaintiffs sustained injuries. The Barber plaintiffs sued the Louisiana Municipal Risk Management Agency Group Self-Insured Fund (LMRMA), the City of Pineville, the Estate of Larry Jeane, Shelter Mutual Insurance Co., the Rapides Parish Police Jury, the State of

Louisiana, the City of Pineville City Marshal's Office, Republic, and an unnamed insurance company. The Estate of Jeane filed a cross-claim against Republic.

The Estate of Jeane filed a motion for summary judgment seeking a ruling that the Umbrella Liability Policy issued by Republic provided coverage for the accident. Republic, who issued a Personal Auto Policy and an Umbrella Liability Policy to Mr. Jeane and his wife, filed a motion for summary judgment arguing that neither the Personal Auto Policy nor the Umbrella Liability Policy provided coverage for the accident. The trial court held a hearing on December 12, 2016 on the cross motions for summary judgment. At the conclusion of the hearing, the trial court found that the Personal Auto Policy issued by Republic did not provide coverage. The trial court further found that the Umbrella Liability Policy provided to the Jeanes by Republic did provide coverage. This oral ruling was reduced to a written judgment signed by the trial court on January 30, 2017, and certified as immediately appealable pursuant to La.Code Civ.P. art. 1915. In that judgment, the trial court specifically reserved judgment on the duty of Republic to defend the Estate of Jeane under the terms of the Umbrella Liability Policy, pending a decision by this court on the issue of coverage.

On January 9, 2017, Republic filed notice of its intent to file a supervisory writ application seeking a review of the trial court's December 12, 2016, ruling. Republic later filed an appeal of the January 30, 2017 judgment of the trial court. This court granted the writ application for the limited purpose of consolidating it with the appeal. *Barber v. La. Muni. Risk Mgmt. Agency Group Self-Insured Fund*, an unpublished decision bearing docket number 17-64 (La.App. 3 Cir. 3/10/17).

### EXCEPTIONS AND MOTIONS FILED ON APPEAL

Since this appeal and writ have been lodged in this court, the three parties involved in this appeal have filed twenty-four pleadings in this court. In addition

2

to the answers filed by the appellants and briefs in support of all the parties' respective positions, Republic and the Estate of Jeane have filed numerous exceptions and motions in an attempt to have this court consider issues not raised in the trial court, or raised after the hearing on December 12, 2016, and the signing of the judgment on January 30, 2017. The motions were referred to the panel reviewing the merits of the appeal. Rule 1-3 of the Uniform Rules of the Courts of Appeal sets forth the scope of review in this court (emphasis added):

> The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, § 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which **were submitted to the trial court** and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.

Most notably, the Estate of Jeane's Exceptions of No Right of Action and Mootness and Motion to Dismiss Republic's Suspensive Appeal, arguing that Republic waived its coverage defense by asserting a liability defense without providing separate counsel to the Estate, has not been argued before or ruled upon by the trial court. Further, all of the evidence that the Estate of Jeane relies on to support its exception was filed in the trial court after the signing of the January 30, 2017 judgment before us for review. The Estate of Jeane argues that the evidence appears in the record sent to this court, therefore in the interest of justice we should rule on their exception. The evidence only appears in the record before us because the parties could not agree on a designation of the record for the purposes of this appeal, and the trial court ordered the entire record be sent up following a hearing on March 27, 2017. Since the judgment before us is an interlocutory judgment, the parties have continued to litigate issues after January 30, 2017. Thus, the record contains documents related to issues presented to the trial court that have not been fully litigated below, including the issue raised in Estate of Jeane's answer to the

appeal and exceptions.  Because the waiver of a coverage defense has not been submitted to the trial court for a decision, we decline to rule on it in this appeal. The Exceptions of No Right of Action and Mootness filed by the Estate of Jeane is overruled, and the Motion to Dismiss the Appeal filed in the same pleading is denied.

Furthermore, the Estate of Jeane's Answer to the Appeal raises, in part, the same issue regarding waiver of a coverage defense.  It is clear that these issues were not presented to the trial court for a decision prior to the January 30, 2017 judgment.  The Estate of Jeane admits as much in its answer, alleging that Republic's actions subsequent to the judgment before us on appeal constitute the basis for its answer to appeal.  We therefore grant in part Republic's Motion to Dismiss and Motion to Strike Jeane's Answer to the Appeal, and will not consider the issue of the waiver of the coverage defense.  To the extent that the Estate of Jeane's Answer to the Appeal seeks penalties and attorney fees for the misrepresentation of the Business Use Exclusion by Republic, we deny Republic's motion to dismiss the Estate of Jeane's answer.  Further, we deny the Estate of Jeane's Alternative Motion to Remand and/or Stay the Appeal.

Both Republic and the Estate of Jeane have filed motions to supplement the record with exhibits never presented to the trial court.  Many of the exhibits were created well after the January 30, 2017 judgment was even signed.  For instance, there is a letter dated May 26, 2017, that both parties seek to introduce.  An appellate court cannot receive new evidence.  *Fontana v. Landry*, 09-322 (La.App. 3 Cir. 10/7/09), 20 So.3d 578.  Therefore, the Estate of Jeane's Motion to Supplement the Record with five documents from June 2017 is denied.  Republic's Alternative Motion to Supplement the Record on Appeal with a letter dated May 26, 2017, and an affidavit is denied.  Republic's Motion to Strike Exhibits

4

Attached to the Estate of Larry Jeane's Briefs, Opposition Memoranda and Exception is granted, as the exhibits include four copies of the May 26, 2017 letter and four affidavits attesting to never having received said letter. Republic's Alternative Motion to Supplement the Record with a March 2, 2017 letter and an affidavit dated August 17, 2017, is denied. Finally, the Estate of Jeane's Motion to Strike the Alleged May 26, 2017 Letter and Affidavit of Alicia Hamby is moot, as we have denied the motion to supplement the record with these documents.

Republic has also filed a Motion to Dismiss and Motion to Strike Plaintiff-Appellees' "Objections to Republic SMJ [sic] Exhibits" Contained within the Plaintiffs' Appellee Briefs. Republic claims the Barber plaintiffs should not be allowed to renew objections to exhibits attached to Republic's motion for summary judgment because they did not raise these objections in their answer to the appeal. In opposition, the Barber plaintiffs point out that an answer is not required in opposition to Republic's application for supervisory writs, which is consolidated with the appeal in this case. Furthermore, contemporaneous objections to the attachments were raised in the trial court. Finally, the Barber plaintiffs argue that the objection to the exhibits does not amount to a request for a modification of the judgment on appeal, so it is unnecessary to raise the objection in an answer to the appeal. We review motions for summary judgment de novo, applying the same criteria as the trial court to determine whether summary judgment is appropriate. *Wright v. La. Power & Light*, 06-1181 (La.3/9/07), 951 So.2d 1058. Given that the Barber plaintiffs raised an objection to the exhibit in conformity with La.Code Civ.P. art. 966, we deny Republic's motion to strike and motions to dismiss the arguments advanced regarding the admissibility of the documents at issue.

Republic has also filed a Motion to Dismiss Plaintiff-Appellee's Answer to the Appeal, arguing that the issue raised in the Barber plaintiffs' answer was not

5

properly raised in the trial court. Further, they argue the answer to the appeal is without merit. In their answer to the appeal, the Barber plaintiffs argue that there was language inserted into the judgment prepared by Republic referring to the "exhaustion" of coverage that was never raised in the trial court. The pleadings before us indicate there is disagreement among the parties about the import of certain language used by the trial court in its oral ruling on December 12, 2016. Further, there was extensive discussion among the parties about the wording of the judgment, evidenced by the proposed judgment drafted by the Estate of Jeane that was presented to the trial court and is in the record. We find the issue raised by the Barber plaintiffs is ripe for review on appeal, and deny Republic's Motion to Dismiss the Barber plaintiffs' answer to the appeal.

The final motion we must address is Republic's Motion to Strike Misrepresentation of Fact Contained within the Appellees Briefs, and Alternatively, Motion to Supplement the Record. Republic argues that both the Estate of Jeane and the Barber plaintiffs misrepresent the negotiations among the parties regarding the submission of a judgment to the trial court for signature. Further, they argue that these misrepresentations and the language used in the Estate of Jeane's brief violates the Uniform Rules of Court, Courts of Appeal, Rule 2-12.2(C). Alternatively, Republic seeks to introduce into the record on appeal letters among the parties regarding the negotiations in drafting the judgment. In response, the Barber plaintiffs oppose the motion to strike, and alternatively seek to supplement the record.

For reasons previously discussed, the alternative motions of Republic and the Estate of Jeane to supplement the record are denied. We have reviewed the briefs submitted and find no language that merits the harsh penalty of being stricken. Thus, Republic's motion to strike is denied. We note that regardless of

the process by which the judgment was submitted to the trial court, the task of this court is to review the merits of the actual judgment signed by the trial court.

## ASSIGNMENTS OF ERROR

Proceeding to the merits of this appeal, Republic asserts six assignments of error:

1. The trial court erred in failing to find that coverage was excluded under the Umbrella policy which followed form and thereby adopted the "regular use exclusion contained within the underlying Personal Auto policy as a matter of law.

2. The trial court erred when it failed to find that the "retained limit" necessary to trigger coverage under the umbrella policy was not present.

3. The trial court erred in failing to apply the exclusions contained within the Follow-Form Endorsement of the Umbrella policy, which unambiguously excludes these claims from coverage.

4. The trial court erred in failing to find that the parties and the trial court were judicially estopped from considering whether the LMRMA indemnity agreement could meet the definition of "underlying insurance," after the trial court was presented with and signed a Judgment dismissing the claims against the LMRMA based upon a judicial confession that LMRMA is not an insurance company and its indemnity agreement is not insurance.

5. The trial court erred by finding that the LMRMA Business Auto indemnity agreement meets the definition of "underlying insurance" within the Republic Personal Umbrella policy thereby triggering coverage under the Umbrella policy.

6. The trial court erred by failing to find that the LMRMA Business Auto indemnity agreement does not insure the same type of liabilities as the Personal Auto policy, and therefore cannot meet the definition of "underlying insurance" to trigger coverage under the Umbrella policy.

Answering the appeal, the Barber plaintiffs assert four assignments of error:

1. Louisiana law does not require the exhaustion of underlying insurance for the exposure of an umbrella or excess policy;

2. It was legal error to require exhaustion of or declare the ranking/priority of unknown phantom hypothetical insurance policies that may not exist because no mover requested such a judicial declaration;

7

3. It was legal error to require exhaustion of or declare the ranking/priority of unknown phantom hypothetical insurance policies that may not exist because the evidence was insufficient to show that any other policies exist;

4. It was legal error to require exhaustion of or declare the ranking/priority of unknown phantom hypothetical insurance policies that may not exist because the "other insurance clauses" in those policies are required to reach such a legal determination.

Given our dismissal of a part of the Estate of Jeane's answer to the appeal, the first, second, and fourth assignments of error raised in its brief are pretermitted. There remains one issue raised by the Estate that we consider in this appeal:

3. Is the Estate entitled to penalties and attorneys' fees as a result of Republic's repeated misrepresentation of its Umbrella Policy when (in declination letters and pleadings) the trial court found the BUE inapplicable and Republic did not appeal that finding?

## DISCUSSION

*Standard of Review*

The supreme court explained the appropriate standard for an appellate court to apply in reviewing a judgment on a motion for summary judgment in *Robinson v. Heard*, 2001-1697, pp. 3-4 (La. 2/26/02), 809 So.2d 943, 945:

> A reviewing court examines summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730, 750. A reviewing court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Smith*, 639 So.2d at 750.

> Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. *Sanchez v. Callegan*, 99-0137 (La.App. 1 Cir. 2/18/00), 753 So.2d 403, 405. When the language of an insurance policy is clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. *Sanchez*, 753 So.2d at 405.

8

In *Succession of Fannaly v. Lafayette Insurance Co.*, 01-1144, 01-1343, 01-1355, 01-1360, pp. 3-4 (La. 1/15/02), 805 So.2d 1134, 1137 (citations omitted), the supreme court explained the framework for evaluating insurance coverage questions:

> An insurance policy is an aleatory, nominate contract subject to the general rules of contract interpretation as set forth in our civil code. The extent of coverage under an insurance contract is dependent on the common intent of the insured and insurer. Thus, when interpreting an insurance contract, courts must attempt to discern the common intent of the insured and insurer.
>
> In ascertaining the common intent of the insured and insurer, courts begin their analysis with a review of the words in the insurance contract. Words in an insurance contract must be ascribed their generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. Moreover, an insurance contract is construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions.

In order to prevail on its motion for summary judgment, the Estate of Jeane bears the burden of proving that the incident in question falls within the policy's terms. *Jessop v. City of Alexandria*, 03-1500 (La.App. 3 Cir. 3/31/04), 871 So.2d 1140, *writ denied*, 04-1529 (La. 10/1/04), 883 So.2d 991 (citing *Miller v. Superior Shipyard and Fabrication, Inc.*, 01-2907 (La.App. 1 Cir. 8/20/03), 859 So.2d 159). In order for Republic to prevail on its motion for summary judgment, it bears the burden of showing that there is no reasonable interpretation of the policy that would afford coverage when applied to the undisputed material facts. *Id.*

*Admissibility of Summary Judgment and Supervisory Writ Exhibits*

The Barber plaintiffs objected to the inclusion of Miller's Standard Insurance Policy Forms in the materials provided to the court by Republic in their motion for summary judgment. Louisiana Code of Civil Procedure article 966(4) states:

> The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.

The Barber plaintiffs point out that these forms, printed from Westlaw, are not a type of document listed. We agree. Republic's argument that these documents are secondary sources, and thus admissible, is without merit. Furthermore, we are charged with interpreting the insurance contract between Republic and the Jeanes, not a standard form, so the documents are irrelevant to our inquiry.

The Barber plaintiffs objected to the inclusion in the supervisory writ application of the stipulated judgment granting a Peremptory Exception of No Cause of Action filed by LMRMA and dismissing LMRMA from the suit. That judgment was presented to the trial court at the beginning of the hearing on the motions for summary judgment on December 12, 2016, and signed on that date. Given that this judgment forms part of the record on the appeal now consolidated with the supervisory writ application, we find no merit in the contention that it should not be considered.

*Language of the Umbrella Policy*

It is undisputed that Republic issued three separate policies to the Jeanes: a homeowner's policy, a personal automobile policy, and an umbrella policy. The homeowner's policy is not at issue in this case. The trial court granted partial summary judgment in favor of Republic finding that the personal auto policy did not provide coverage for the incident. That finding has not been appealed to this court. The only issue is whether the umbrella policy affords coverage. Republic filed a motion for summary judgment asserting that it does not, while the Estate of Jeane, joined by the Barber plaintiffs, filed a motion for summary judgment asserting that the umbrella policy does provide coverage. Ultimately, the trial

court found that the umbrella policy did provide coverage for the incident, and granted the Estate of Jeane's motion for summary judgment while denying the Republic's motion for summary judgment.

The relevant language in the Republic Personal Umbrella Liability Policy which provides coverage, subject to certain exclusions, appears, in relevant part, in Section II.A., as amended by the provisions of the Personal Umbrella Liability Policy Amendment of Policy Provisions – Louisiana endorsement:

A. Insuring Agreement

We will pay damages, in excess of the "retained limit", for:

1.      "Bodily injury" or "property damage" for which an "insured" becomes legally liable due to an "occurrence" to which this insurance applies[.]

As with any insurance contract, definitions form a significant part of the agreement. There is no dispute that Mr. Jeane is an "insured" under the terms of the Republic Umbrella policy, or that the collision of Mr. Jeane's vehicle and the Barber plaintiffs' vehicle is an "occurrence." "Retained limit" is defined in the Republic umbrella policy as follows:

"Retained limit" means:

1.      The total limits of any "underlying insurance" and any other insurance that applies to an "occurrence" or offense which:
        a.      Are available to an "insured", or
        b.      Would have been available except for the bankruptcy or insolvency of an insurer providing "underlying insurance";

or

2.      The deductible, if any, as stated in the Declarations, if the "occurrence" or offense:

        a.      Is covered by this policy; and
        b.      Is not covered by "underlying insurance" or any other insurance.

11

The definition of "retained limit" is further modified in the Personal Umbrella Liability Policy Auto Liability Following Form Endorsement as follows:

> With respect to "bodily injury" or "property damage" arising out of the ownership, maintenance, occupancy, operation, use, loading or unloading of any "auto", the definition of "retained limit" is replaced by the following:
>
> "Retained limit" means:
>
> 1. The retained policy limits for auto liability coverage shown in the Declarations; and
>
> 2. The total limits of any other coverage provided by "underlying insurance" and any other insurance that applies to an "occurrence" which:
>
> > a. Are available to an "insured"; or
> > b. Would have been available except for the bankruptcy or insolvency of an insurer providing "underlying insurance".

"Underlying insurance" is defined in the Republic umbrella policy as follows:

> "Underlying insurance" means any policy providing the "insured" with primary liability insurance covering one or more of the types of liability listed in the Declarations and at limits no less than the retained policy limits shown for those types of liability listed in the Declarations.

*Following Form Endorsement*

Republic argues that the trial court erred in failing to find that the Personal Umbrella Liability Auto Liability Following Form Endorsement adopted all the terms and conditions of the auto liability policy issued by Republic. Given that the auto liability policy contained a "regular use" exclusion that was the basis for denying coverage for this incident, Republic argues that the same exclusion bars coverage by its umbrella policy. To support its claim, Republic cites *Evins v. Louisiana Farm Bureau Mutual Insurance Company*, 04-282 (La.App. 1 Cir. 2/11/05), 907 So.2d 733.

In *Evins*, the plaintiff was a pedestrian who was injured when she was struck by a Ford Expedition owned by Alton Landry and driven by his son Brandon Landry. Farm Bureau had issued an auto policy and an umbrella policy to Alton, but because of an increase in premium, Alton had removed the Expedition from those policies and purchased a separate policy through Progressive Security Insurance Company to cover the Expedition. The plaintiff conceded that the Farm Bureau auto policy did not cover the incident. The court found that there was an "Auto Liability Following Form" endorsement to the Farm Bureau umbrella policy which contained the following language:

> Except to the extent that coverage is available to the insured in the underlying policies as stated in the schedule of underlying insurance, this policy does not apply to the ownership, maintenance, operation, use, loading or unloading of any automobile while away from premises owned by, rented to, or controlled by the insured.

*Evins*, 907 So.2d at 735-6. The *Evins* court noted that the schedule of underlying insurance prepared for the Farm Bureau umbrella policy did not include the Progressive policy. Therefore, the court found that the umbrella policy did not provide coverage.

The Republic umbrella policy includes an endorsement that contains the title "Following Form." We must examine the terms of that endorsement, rather than merely the title, to determine the effect of that endorsement. As cited above, this endorsement changed the definition of the term "retained limit" to mean not only the limits of the policies listed in the declarations page, but also any "underlying insurance" that is available to the "insured" for an "occurrence." The endorsement further includes an additional exclusion:

The following exclusion is added:

The coverages provided by this policy do not apply to "bodily injury" or "property damage" arising out of:

a. The ownership of any "auto" by an "insured";
b. The maintenance, occupancy, operation, use, loading or unloading of any "auto" by any person;
c. The entrustment of any "auto" by an "insured" to any person;
d. The failure to supervise or negligent supervision of any person involving any "auto" by an "insured"; or
e. Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving any "auto".

However, this exclusion does not apply to the extent that auto liability coverage is provided by "underlying insurance" at the time of the occurrence.

Nothing in this endorsement states that the umbrella policy adopts the same coverages and exclusions as the Republic auto policy. Further, this endorsement does not provide that the umbrella policy covers only those occurrences covered by the Republic auto policy. In fact, it does just the opposite, in that it excludes coverage for use of an automobile unless there is "underlying insurance." The definition of "underlying insurance" in this policy is broader than just those policies listed in the declarations, as it includes "primary liability insurance covering one or more of the types of liability listed in the Declarations and at limits no less than the retained policy limits shown for those types of liability listed in the

14

Declarations." Thus, we find that despite the language of the title of the endorsement, this case is clearly distinguishable from *Evins*, and the endorsement at issue does not preclude coverage under the Republic umbrella policy simply because the Republic auto policy precludes coverage.

In so finding, we explicitly reject the argument raised in in Republic's brief that "Louisiana courts have held that when there is a 'follow-form' endorsement in an umbrella policy, an express designation that it adopts the terms, conditions, and exclusions of the underlying liability policy is not required to have that effect." To support this argument, Republic cites *Evins* and *Edwards v. Louisiana Farm Bureau Mutual Insurance Company*, an unpublished opinion bearing docket number 02-1495 (La.App. 1 Cir. 4/26/13), *writ denied*, 13-1175 (La. 8/30/13), 120 So.3d 269. *Edwards* contained the same follow form clause as *Evins*, and is thus distinguishable from the case before us. Further, while the court in *Edwards* makes a reference to the caption of the endorsement ("Automobile Liability Following Form") in that case, its analysis depends on the actual language of the endorsement, as do the cases cited by the *Edwards* court. *See State rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of La.*, 10-689 (La.App. 1 Cir. 2/11/11), 56 So.3d 1236, *writ denied*, 11-849 (La. 6/3/11), 63 So.3d 1023; *and Rivere v. Heroman*, 96-1568 (La.App. 1 Cir. 2/5/97), 688 So.2d 1293.

*The LMRMA Indemnity Agreement as "Underlying Insurance"*

Even if coverage under the Republic auto policy for this occurrence is not required, the exclusion in the Personal Umbrella Liability Auto Liability Following Form Endorsement would exclude coverage for use of an auto unless "auto liability coverage is provided by 'underlying insurance'[.]" Republic argues that the LMRMA indemnity contract is not "underlying insurance," therefore the use of an auto is excluded from coverage.

Republic argues that the LMRMA is not an insurer. LMRMA is an inter-agency risk pool created pursuant to the Local Governmental Subdivision Self Insurance Act of 1979. La.R.S. 33:1341, et seq. Louisiana Revised Statutes 33:1345 states:

> An interlocal risk management agency is not an insurance company or an insurer under the laws of this state and the development and administration by such agency of one or more group self insurance funds shall not constitute doing an insurance business. Intergovernmental agreements providing for the creation and maintenance of an interlocal risk management agency shall not be deemed to constitute insurance as defined by R.S. 22:46, nor shall the interlocal risk management agency or the development of a group self insurance fund be subject to the provisions of Title 22, Chapter 1, of the Louisiana Revised Statutes of 1950.

In important ways, LMRMA has historically been treated differently than insurance companies governed by Title 22 of the Louisiana Revised Statutes. LMRMA is not subject to direct action. *See* La.R.S. 22:1269(B); *Logan v. Hollier*, 424 So.2d 1279 (La.App. 3 Cir. 1982); *and Hunt v. Louisiana Muni. Risk Mgmt. Agency*, 14-456 (La.App. 3 Cir. 4/22/15), 176 So.3d 1110, *writ denied*, 15-949 (La. 8/28/15), 176 So.3d 404. In this case, the trial court issued a judgment on the day of the hearing dismissing LMRMA from this suit pursuant to an exception of no cause of action for just this reason. LMRMA is also not required to comply with the uninsured motorist statute. *See Senegal v. Faul*, 598 So.2d 686 (La.App. 3 Cir.1992).

Republic further cites *Louisiana Safety Association of Timbermen Self-Insurers Fund v. Louisiana Insurance Guaranty Association*, 09-23 (La. 6/26/09), 17 So.3d 350, for the proposition that the LMRMA agreement is not insurance. In that case, a trade group, the Louisiana Safety Association of Timbermen (LSAT) organized a self-insured fund pursuant to La.R.S. 1195 in order to satisfy its members' workers' compensation obligations. LSAT members paid into the Fund

and agreed to be liable jointly and solidarily for any workers' compensation award. To ensure that it could fulfill its obligations, the LSAT Fund also purchased a policy excess insurance, as required by law, from Reliance Indemnity Company. When Reliance went into liquidation in Pennsylvania, the LSAT Fund filed a claim against the Louisiana Insurance Guaranty Association (LIGA). LIGA denied the claim because it determined that the LSAT Fund was an insurer, the Reliance policy was a policy of reinsurance, and LIGA does not cover claims of insurers. On summary judgment, the trial court and the second circuit determined that the LSAT Fund was not an insurer for the purposes of LIGA. *Louisiana Safety Assoc. of Timbermen Self-Insurers Fund v. Louisiana Ins. Guaranty Assoc.*, 43,615 (La.App. 2 Cir. 12/3/08), 998 So.2d 817. The supreme court granted an application for a writ of certiorari to determine the correctness of the lower courts' decision. *Louisiana Safety Assoc. of Timbermen Self-Insurers Fund v. Louisiana Ins. Guaranty Assoc.*, 09-23 (La. 3/6/09), 3 So.3d 493.

Reversing the lower courts, the supreme court analyzed the issue of whether the LSAT fund was an insurer:

> From the outset, LIGA contends the Fund's claims against it are disallowed because the Fund is an insurer as provided in La.Rev.Stat. § 22:1379(3)(b) and, at least for LIGA purposes, it was as an insurer that the Fund obtained a policy of reinsurance from Reliance. To the contrary, the Fund admits it is a workers' compensation group self-insurance entity, but contends the appellate court did not err when it determined the Legislature specified in La.Rev.Stat. § 23:1195(A)(1) that this funding arrangement for purposes of workers' compensation is not insurance. Thus, our first task is to ascertain the meaning of La.Rev.Stat. § 23:1195(A)(1).

> Turning to general rules of statutory construction, courts should remember the following axioms. Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198; *Hutchinson v. Patel*, 93-2156 (La.5/23/94); 637 So.2d 415. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be

17

applied as written, with no further interpretation made in search of the legislative intent. La. Civ.Code art. 9; *Cat's Meow*, 720 So.2d at 1198. The starting point for interpretation of any statute is the language of the statute itself. *Touchard v. Williams*, 617 So.2d 885 (La.1993).

La.Rev.Stat. § 23:1195(A)(1) provides:

> (1) Any five or more Louisiana employers who are not public entities, each of whom has a positive net worth, is financially solvent, and is capable of assuming the obligations set forth under this Chapter, and who are all members of the same bona fide trade or professional association may agree to pool their liabilities to their employees on account of personal injury and occupational disease arising out of or incurred during the course and scope of the employment relationship. *This arrangement shall not be deemed to be insurance and shall not be subject to the provisions of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950.* (Emphasis added).

Examining that statutory language, the appellate court stated "[t]he logical conclusion arising from the pronouncement that the arrangement shall not be deemed insurance is that a self-insurer fund ... is not an insurer ... and is not an insurer whose claims are excluded from LIGA coverage...." *Louisiana Safety Association of Timbermen-Self Insurers Fund*, 998 So.2d at 822. After carefully examining the language of La.Rev.Stat. § 23:1195(A)(1) and related statutes, we determine otherwise.

It is presumed every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-0360 (La.12/3/03), 860 So.2d 1112. It is presumed the Legislature understands the effect and meaning of the words it uses in a statute. *Spragio v. Board of Trustees*, 468 So.2d 1323 (La.App. 1 Cir.), *writ denied*, 472 So.2d 32 (La.1985). The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184 (La.1997).

Had the Legislature simply stated, "This arrangement shall not be deemed to be insurance," we might agree with the lower courts' holding that the Fund was not an insurer. However, as quoted above La.Rev.Stat. § 23:1195(A)(1) further states the arrangement "shall not be subject to the provisions of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950." Aware that every word, sentence or provision in the statute was intended to serve some useful purpose, we

find it necessary to delve farther to ascertain the full import of La. Rev. Stat § 23:1195(A)(1).

An examination of the Insurance Code shows it is divided into eight chapters. As applicable to our analysis, Chapter 3 addresses self-insurers. There, La.Rev.Stat. § 22:3001(A) provides: "This Chapter shall be applicable to and shall regulate self-insurers and self-insurance plans, as defined in this Chapter, *which are subject to the jurisdiction of the commissioner of insurance under Chapter 1 of this Title. This Chapter shall not be applicable to any worker's compensation plan, ...*"(Emphasis added). The inclusion of this language in La.Rev.Stat. § 22:3001(A) indicates the Legislature contemplated that there are self-insurers who are subject to the provisions of Chapter 1 of the Insurance Code and demonstrates that the Legislature emphasized in La.Rev.Stat. § 23:1195(A)(1) the fact that workers' compensation self-insurers are differentiated from other self-insurers, particularly by exclusion from the provisions of Chapter 1 of the Insurance Code.

When we read La.Rev.Stat. § 23:1195(A)(1) in *pari materiae* with La.Rev.Stat. § 22:3001(A), it is evident the Legislature sought only to exclude workers' compensation self-insurers from the regulatory provisions of Chapter 1 of Title 22 of the Insurance Code when it adopted the language of La.Rev.Stat. § 23:1195(A)(1). Thus, its designation in La.Rev.Stat. § 23:1195(A)(1) that self-insurance is not deemed insurance has a circumscribed and limited meaning, not the broad pronouncement the Fund urges. Having so concluded, we must further examine the Fund's formative documents and its contract with Reliance to determine the true character of the legal relationship between these entities.

Louisiana's Insurance Guaranty Association Law does not define the term "insurer." Notwithstanding, the Louisiana Insurance Code provides a general definition for the term "insurer":

> [E]very person engaged in the business of making contracts of insurance, other than a fraternal benefit society. A reciprocal, an inter-insurance exchange, insurance exchange syndicate, or a Lloyds organization is an "insurer". Any person who provides an employee benefit trust as specified in Subparagraph (9)(a) of this Section is an insurer. A health maintenance organization is an insurer but only for the purposes enumerated in R.S. 22:242(7).

La.Rev.Stat. § 22:5(10).

Also, as defined in the Louisiana Insurance Code, insurance is "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." La.Rev.Stat. § 22:5(9)(a). Moreover, the Insurance Guaranty Association Law

defines an "insurance policy" as "an insurance contract as defined in R.S.22:624."

As the court of appeal noted, self-insurance is one of the means of securing workers' compensation to employees as provided in La.Rev.Stat. § 23:1168.  It was this vehicle LSAT chose to meet its members' workers' compensation obligations when it established the Fund. In conjunction with the formation of the Fund, LSAT's members executed an indemnity agreement which specified each member agreed to be held liable jointly and in solido for any workers' compensation award, to promptly pay membership premiums, and to pay all assessments the Fund lawfully levied. Utilizing the definitions referenced above, it is clear, at least for purposes of LIGA, the Fund was an insurer – the Fund undertook to indemnify its members for the full amount of workers' compensation claims allowed under the Louisiana Workers' Compensation Act and the members agreed to pay premiums and assessments to the Fund for that purpose.  In reaching the conclusion the Fund was an insurer, we find our determination buttressed by the characterization the Fund and Reliance ascribed to their contractual relationship.

*Louisiana Safety Assoc. of Timbermen Self-Insurers Fund*, 17 So.3d at 355-358.

The supreme court went on to determine that the LSAT Fund contracted for a policy of reinsurance, not excess insurance, from Reliance.  The court stated:

The Fund is liable, or at risk, for the *full amount* of any workers' compensation claim allowed under the Workers' Compensation Act. In order to reduce its exposure as an *insurer*, it bought a policy of reinsurance that limited its exposure on any claim in excess of $200,000.

*Id.* at 359.

It would seem, then, that the supreme court's holding favors the arguments of the Estate of Jeane and the Barber plaintiffs, and not Republic, in that it found that the LSAT Fund, which is analogous to LMRMA, was an insurer for the purposes of LIGA.  But, in dicta, the supreme court also stated:

In contrast, an excess policy provides additional coverage to an insured on their property or business, or to cover a potential property damage or liability claim.  The excess policy does not insure another party, but rather, the excess policy only comes into play if the damages to the covered property or a judgment for damages, exceeds the coverage of the primary policy.  Notably, an excess policy assumes the existence of *an underlying policy*.  In this present matter, there is no underlying policy because the Fund does not issue policies;

20

it issues certificates of membership. If the claims paid exceed the income from membership dues, the shortfall is covered by assessment to its members, not by liquidation of the Fund.

*Id.* at 359-60. This language supports the position of Republic, which argues that the indemnity agreement between the city of Pineville and LMRMA is not an underlying policy for the purpose of excess insurance.

The supreme court used the definition in the insurance code at La.R.S. 22:5(10) to determine that the LSAT Fund was an insurer. But La.R.S. 22:5 was renumbered as La.R.S. 22:46 by 2008 La.Acts No. 415, § 1. Louisiana Revised Statute 33:1345 states, "Intergovernmental agreements providing for the creation and maintenance of an interlocal risk management agency shall not be deemed to constitute insurance as defined by R.S. 22:46." Therefore, it is not insurance pursuant to the insurance code. The definition of "underlying insurance" in the Republic umbrella policy is "any policy providing the 'insured' with primary liability insurance. . ." According to the reasoning of the supreme court, LMRMA does not issue insurance policies. We find that the LMRMA indemnity agreement is not "any policy" for the purpose of the Republic umbrella policy, and does not meet the requirements of "underlying insurance" for the purpose of the Personal Umbrella Liability Auto Liability Following Form Endorsement. Therefore, the Republic umbrella policy does not cover the occurrence at issue in this case.

We therefore reverse the trial court's denial of Republic's motion for summary judgment which argued that the Republic umbrella policy did not provide coverage, and likewise reverse the trial court's granting of the Estate of Jeane's motion for summary judgment which argued that the Republic umbrella policy did afford coverage. Because we find merit in this assignment of error, we pretermit discussion of Republic's remaining assignments of error.

*Barber Plaintiffs Answer to the Appeal*

In its answer to the appeal, the Barber plaintiffs argue it was error for the trial court to include language in the judgment requiring "exhaustion . . . of any other insurance available to the Estate of Larry Jeane, Sr." In full, that portion of the judgment states:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Republic Personal Umbrella Policy, policy number UI2 6281082 00, does provide umbrella insurance coverage to the Estate of Larry Jeane, Sr., up to the limits of said policy for the claims of Plaintiffs herein and subject to the exhaustion of the underlying LRMRA Business Auto Agreement, policy number 100-0419-15005, and any other insurance available to the Estate of Larry Jeane, Sr., that the Cross Claim Plaintiff's Motion for Summary Judgment on this issue is hereby granted and Republic's Motion for Summary Judgment on this issue is hereby denied, and that these Judgments on both the grant and denial of the Motions regarding insurance coverage under the Republic Personal Umbrella policy are partial final judgments pursuant to La.C.C.P. art. 1915, which are immediately appealable, and that the Court expressly finds that there is no just reason to delay an appeal of this matter.

The Barber plaintiffs argue that no other insurance policies have been raised by the parties as applicable to this occurrence. Thus, it was improper for the trial court to make coverage under the umbrella policy contingent on the existence of a hypothetical insurance policy.

Our determination that the Republic umbrella policy does not afford coverage and that we must reverse the trial court's judgment renders the Barber plaintiffs' answer to the appeal moot.

*Estate of Jeane's Answer to the Appeal*

In its answer to the appeal, the only issue remaining for us to decide is whether the trial court erred in failing to sanction Republic by awarding penalties and attorney fees for arguing that the Republic umbrella policy contained a Business Use Exclusion. The Estate of Jeane argues that Republic misrepresented its policy in both the initial declination letter and in its answer to the Estate of Jeane's cross-claim by claiming the policy included a Business Use Exclusion.

22

The Republic policy does not contain a Business Use Exclusion, as Republic later conceded, and the trial court's judgment held. The trial court, though, failed to determine whether penalties and attorney fees were warranted because of a violation of La.R.S. 22:1973. As we must remand this case for further proceedings, we leave that decision to the trial court in the first instance.

## CONCLUSION

The application for supervisory writs filed by Republic is granted and made peremptory, and the trial court's judgment is reversed insofar as it found that the Republic umbrella policy provided coverage for the occurrence at issue in this appeal. The case is remanded to the trial court for further proceedings.

**ESTATE OF JEANE MOTION TO SUPPLEMENT THE RECORD DENIED.**
**REPUBLIC MOTION TO DISMISS AND MOTION TO STRIKE JEANE'S ANSWER TO THE APPEAL GRANTED IN PART AND DENIED IN PART. REPUBLIC ALTERNATIVE MOTION TO SUPPLEMENT THE RECORD ON APPEAL DENIED.**

**ESTATE OF JEANE MOTION TO REMAND AND/OR STAY THE APPEAL DENIED.**

**ESTATE OF JEANE EXCEPTIONS OF NO RIGHT OF ACTION AND MOOTNESS OVERRULED.**

**ESTATE OF JEANE MOTION TO DISMISS REPUBLIC'S SUSPENSIVE APPEAL DENIED.**

**REPUBLIC MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF-APPELLEES' "OBJECTIONS TO REPUBLIC SMJ EXHIBITS" CONTAINED WITHIN THE PLAINTIFFS' APPELLEE BRIEF DENIED.**

**REPUBLIC MOTION TO DISMISS PLAINTIFF-APPELLEES' ANSWER TO THE APPEAL DENIED.**

**REPUBLIC MOTION TO STRIKE MISREPRESENTATIONS OF FACT CONTAINED WITHIN THE APPELLEES BRIEFS, AND ALTERNATIVELY, MOTION TO SUPPLEMENT THE RECORD DENIED.**

**REPUBLIC MOTION TO STRIKE EXHIBITS ATTACHED TO THE ESTATE OF LARRY JEANE'S BRIEFS, OPPOSITION MEMORANDA, AND EXCEPTION GRANTED.**

23

**REPUBLIC ALTERNATIVE MOTION TO SUPPLEMENT THE RECORD WITH COUNTER EVIDENCE DENIED.**

**ESTATE OF JEANE MOTION TO STRIKE ALLEGED MAY 26, 2017 LETTER AND AFFIDAVIT OF ALICIA HAMBY DENIED AS MOOT.**

**WRIT GRANTED AND MADE PEREMPTORY.**

**JUDGMENT REVERSED.**

**REMANDED FOR FURTHER PROCEEDINGS.**